IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CYNTHIA M. HUFF

    Plaintiff,

v.    CASE NO.

TIDEWATER FINANCE COMPANY

    Serve: Alan M. Frieden
           222 Central Park Ave. Ste 1300
           Virginia Beach, VA 23462-0000

## COMPLAINT

Plaintiff, Cynthia M. Huff ("Huff"), by counsel, for his Complaint against Defendant, Tidewater Finance Company ("TFC"), alleges as follows:

## THE PARTIES

1. Plaintiff Huff is a natural person, is, and at all times relevant hereto was, a citizen of the Commonwealth of Virginia, residing in the city of Virginia Beach, Virginia.

2. Defendant TFC is a Virginia corporation, with its principal office located in Virginia Beach, Virginia.

3. Plaintiff is an individual with a disability because she has multiple sclerosis, a physical impairment that substantially limits one or more major life activities, including neurological function and the operation of the central nervous system, which are major bodily functions; and/or because she was regarded as having such an impairment. 42 U.S.C. § 12102; 29 C.F.R. § 1630.2.

## JURISDICTION AND VENUE

4.      This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §§ 451, 1331, and 1343.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA").

5.      Prior to instituting this suit, Huff timely filed an administrative claim with the Norfolk Office of the Equal Employment Opportunity Commission (EEOC) on March 30, 2020.  A true and correct copy of Huff's Charge of Discrimination is attached to this complaint and incorporated by reference as Exhibit "A."

6.      The EEOC failed to resolve the claim and issued a right-to-sue letter dated June 30, 2021.  Huff received the right-to-sue letter on July 3, 2021.  A true and correct copy of Huff's right-to-sue letter is attached to this complaint and incorporated by reference as Exhibit "B."

7.      Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. §1391(b)(2) and (c).

## STATEMENT OF FACTS

8.      TFC employed Huff as an Internal Auditor in June 2013.

9.      The Complainant was diagnosed with multiple sclerosis ("MS") in 2015.  Defendant knew or should have known that the Complainant has MS.

10.     Among others, the Complainant notified multiple members of Defendant's management of her condition shortly after her diagnosis.  She discussed her MS and treatment with them over the course of her employment with Defendant

11. At all times relevant to this action, the Complainant was qualified to perform the essential functions of the job at TFC, and did so successfully until Defendant fired her on February 17, 2020 – just over four weeks after she presented a formal request for accommodations under the ADA.

12. As an individual with MS, Huff was particularly sensitive to temperatures in excess of 72 degrees Fahrenheit.

13. From 2015 through 2019, Huff requested to work in a climate-controlled environment. Defendant eventually acquiesced and placed Huff in a climate-controlled small office. Plaintiff referred to her small office (approximately 100 square feet) as "the Igloo." The Igloo was fully enclosed and had a portable air conditioning unit installed to allow Huff to maintain a working environment of under 72 degrees Fahrenheit.

14. Huff ran her air conditioning unit every day, regardless of the season from 2015 through late 2018.

15. In or about 2017, Defendant moved Huff's department location to another part of its building complex. In so doing, Defendant provided Huff another fully enclosed small office (approximately 100 square feet) – the "Second Igloo" – with a portable air conditioning unit to again allow Huff to maintain a working environment of under 72 degrees Fahrenheit.

16. Huff worked successfully in both the first and second "igloos" – they mostly accommodated her disability effectively.

17. In late 2018, Defendant again moved Huff's department location to another part of its building complex. Defendant then placed Huff in a larger office (approximately 300 square feet). This office had two exterior walls and the same size air conditioning unit previously used in the first two igloos.

18. Unfortunately, this "Third Igloo" was unable to maintain temperatures under 72 degrees Fahrenheit (the required accommodation)[1].

19. Almost immediately after moving into this new office, Huff noticed that her office could not be consistently kept under 72 degrees Fahrenheit.

20. Huff notified her immediate supervisor, Andrea Kiff ("Kiff") and Defendant's Facilities Manager, Larry Cherry ("Cherry").

21. Over the next several months, Selitti, Kiff and Cherry pantomimed giving attention to Huff's concerns and complaints about her office being consistently above 72 degrees Fahrenheit.

22. In reality, Kiff began overly scrutinizing Huff's work product – chastising her for matters that were common among Huff and her coworkers but only saw Huff being punished.

23. Then Kiff's supervisor and Department Director, Heather, Selitti ("Selitti"), changed Huff's responsibilities – adding her to the Consumer Response Team ("CRT") – in addition remaining formally on the Internal Audit Team.  On CRT Huff was placed under a new supervisor, Kelly Miller ("Miller").

24. At the same time Huff also reported to Kiff.  Accordingly, Huff was now being monitored and accessed by two immediate supervisors, Kiff and Miller.  Huff was the only individual in Defendant's employment in this situation.

25. Huff soldiered on, enduring the Third Igloo's unaccommodating heat and high temperatures.  The heat made her often have to go home sick late in her workday.  The heat was continuing to adversely affect her physical and mental health.

26. She continually complained to Kiff and Miller about her workspace heat problems – both of whom ignored her pleas.

---

[1] Plaintiff's accommodation was not a separate workspace but rather the controlled climate with a temperature consistently at or below 72 degrees Fahrenheit.

27. Instead of address Huff's requests for accommodations, her supervisors changed her responsibilities.

28. In the three years that followed the November 2015 granting of an accommodation, Huff was able to perform almost all of her assignments by staying in her "igloos" and staying cool – temperature wise.

29. During her last year of employment, Huff's supervisors continually assigned her tasks that would require her to leave her climate-controlled office space.  For instance, Huff was continually tasked with leaving her office (multiple times a day) to travel to a central printer to retrieve print jobs and courier them to her supervisors, and continual trips to the mail room on the other side of Defendant's corporate campus.

30. In late 2019 and early 2020 Huff was forced to take FMLA leave to deal with her declining physical condition caused by consistently working in temperatures in excess of 72 degrees.

31. In late January 2020 Huff returned to work from her FMLA leave and attempted to present Kiff with multiple notes from her doctors addressing the heat problem and Huff's formal requests for accommodations under the ADA.  Kiff refused to accept the notes.  She instead directed Huff to present them to Defendant's Human Resources ("HR") Department.

32. Huff presented them twice to HR on January 22 and 24, 2020.  On or about January 30, 2020, Defendant told Huff they required doctors notes relating to the requested accommodations.

33. Huff presented the requested doctors notes to Defendant on February 3 and 5, 2020.  Huff did not hear any other response from Defendant in response to these requests.

34. On February 17, 2020 Defendant fired Huff claiming it was "down-sizing" and "eliminating Huff's position."

## **JURY DEMAND**

35.     Plaintiff demands a jury trial on all issues so triable.

## **COUNT I**
FAILURE TO PROVIDE A REASONABLE ACCOMMODATION IN VIOLATION OF
42 U.S.C. § 12101 et seq.

36.     Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

37.     At all times relevant herein, Defendant was an "employer" and Plaintiff was an "employee" under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 et seq.

38.     At all relevant times, Plaintiff was a "qualified person with a disability" within the meaning of the ADA.

39.     Defendant was fully aware of Plaintiff's physical impairment. Despite being aware of Plaintiff's medical conditions, Defendant failed to engage in the interactive process and failed to provide reasonable accommodations as required by the ADA.  Defendant would not have endured any undue hardship by providing Plaintiff the requested reasonable accommodations.

40.     Defendants violated Huff's civil rights by discriminating against her on the basis of her disability, history of disability and/or perceived disability.

41.     Defendants violations of the ADA were willful.  Defendants unlawful practices were carried out with malice and/or reckless indifference to Huff's federal rights.

42.     As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has suffered damages, including but not limited to loss of past and future income and fringe benefits, loss of professional reputation, mental anxiety and emotional distress.

## COUNT II
### WRONGFUL TERMINATION BY REASON OF DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 12101 et seq.

43. Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

44. Plaintiff has a physical impairment that substantially limits one or more major life activities. 42 U.S.C. § 12101 et seq.

45. Plaintiff was qualified for the position she held and was able to perform its essential functions.

46. Plaintiff was repeatedly and persistently subjected to reprimands and other job action solely because of her disability.

47. Ultimately, Defendant terminated Plaintiff's employment.

48. Defendant harmed Plaintiff by wrongfully terminating her by reason of disability discrimination, all in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

49. As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has suffered damages, including but not limited to loss of past and future income and fringe benefits, loss of professional reputation, mental anxiety and emotional distress.

## COUNT III
### UNLAWFUL RETALIATION IN VIOLATION OF 42 U.S.C. § 12101 et seq.

50. Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

51. Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because she engaged in activities protected by the ADA (asking for reasonable accommodations) and therefore disability-based discrimination.

52. As a direct result of Plaintiff's engaging in such protected activities, she was retaliated against immediately and repeatedly by her supervisors and treated differently (and adversely affected) than his coworkers.

53. The stated reasons for Defendants' conduct were not the true reasons, but instead were pretext to hide Defendants' retaliatory animus.

54. Defendant's conduct was intentional and its violations of federal law were willful.

55. As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered damages, including but not limited to loss of past and future income and fringe benefits, loss of professional reputation, mental anxiety and emotional distress.

56. Plaintiff should be awarded an appropriate amount for lost wages and benefits, loss of earning capacity and future lost wages and benefits of employment.

57. Plaintiff is entitled to recover her reasonable attorneys' fees, costs and expert witness expenses pursuant to the ADA.

COUNT IV
UNLAWFUL RETALIATION IN VIOLATION OF FMLA 29 U.S.C. § 2601 et seq.

58. Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

59. Defendant qualifies as an "employer" as defined in the FMLA, 29 U.S.C. § 2611(4), and Plaintiff is an "eligible employee" as defined in the FMLA, 29 U.S.C. § 2611(2).

60. Plaintiff was covered under the FMLA as an employee with a serious health condition employed by Defendant for at least twelve months, and who had performed at least 1250 hours of service during the previous twelve-month period.  29 U.S.C. § 2611(2).

61. Plaintiff had an "entitlement to leave" as defined in the FMLA, 29 U.S.C. § 2612(1) and was retaliated against for taking leave as prescribed in the FMLA.

62. Under the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id.* §2515(a).

63. The FMLA's "prohibition against 'interference' prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights. . . ." 29 C.F.R. § 825.220(c).

*64.* "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." *Id.*

*65.* Employers who violate the FMLA "may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered." *Id.* § 825.220(b); 29 U.S.C. § 2617.

66. Defendant is responsible under the FMLA for retaliating against Plaintiff in violation of her federal rights.

67. Defendant wrongfully fired Huff just three weeks after she returned from FMLA leave.

68. As of Plaintiff's firing, Huff has incurred, and is now incurring a loss of wages in an amount to be proved at trial. These costs and damages include, without limitation, lost wages and medical expenses during Plaintiff's period of unemployment, back pay from the effective date of termination, lost medical expenses, and lost employment benefits, the loss of front pay as of the date of this complaint, attorneys' fees and costs, and any interest on the amount thereon as provided by the FMLA, 29 U.S.C. § 2617.

69. Defendant discriminated against Plaintiff in violation of the FMLA when Defendant terminated Plaintiff because of her applying for and taking FMLA leave and interfering with Plaintiff's right to reinstatement and other rights under the FMLA.

70. Defendant's actions were intentional, willful, and in reckless disregard of Plaintiff's rights under the FMLA.

71. Plaintiff has suffered damages as a result of Defendant's unlawful actions.

72. Plaintiff is entitled to recover her reasonable attorney fees, costs and expert witness expenses pursuant to the FMLA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Cynthia M. Huff prays for entry of judgment in favor of Plaintiff and against Defendant, Tidewater Finance Company the following relief:

    a. Back Pay;

    b. Front Pay;

    c. Compensatory Damages;

    d. Punitive Damages;

    e. Attorneys' fees and costs associated with this suit;

    f. All statutory remedies provided by the ADA and FMLA, including liquidated damages;

    g. Statutory interest on all monetary damage awards, verdicts or judgments; and

    h. All other such relief as may be appropriate to effectuate the purpose of justice.

Date: September 28, 2021                                                Respectfully Submitted,

CYNTHIA M. HUFF

_____/s/_____
Todd M. Gaynor, Esq.
Virginia Bar No.: 47742
GAYNOR LAW CENTER, P.C.
440 Monticello Ave., Suite 1800
Norfolk, Virginia 23510
Voice: (757) 828-3739
Facsimile: (757) 257-3674
tgaynor@gaynorlawcenter.com

*Counsel for Plaintiff*